UNITED STATES *v.* ASTRA BENTWOOD FURNITURE CO. (No. 4308)[1]

---

[1] C. A. D. 147.

United States Court of Customs and Patent Appeals, October 28, 1940

*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard E. FitzGibbon,* Special Attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument October 1, 1940, by Mr. FitzGibbon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain so-called "leg screws" dutiable at 25 per centum ad valorem under paragraph 338 of the Tariff Act of

1930 as claimed by the importer (appellee), rather than at 45 per centum ad valorem under paragraph 397 of that act as assessed by the collector at the port of New York.

Paragraph 338 and the pertinent part of paragraph 397 read:

PAR. 338. Screws, commonly called wood screws, of iron or steel, 25 per centum ad valorem.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

It appearing from the record that the involved articles are similar in all material respects to those involved in the case of *United States* v. *Astra Bentwood Furniture Co.*, 25 C. C. P. A. (Customs) 340, T. D. 49434, the trial court, following our decision in that case, held them dutiable under the provisions of paragraph 338, *supra.*

No question is raised here as to the dutiable status of the involved articles, it being conceded by counsel for appellant that the judgment appealed from is sound if the trial court had jurisdiction to dispose of the case on its merits. Counsel for appellant, however, challenge the jurisdiction of the trial court to determine the dutiable status of the involved articles.

On October 10, 1938, when the cause came on for trial before the court below, counsel for the Government, stating, according to the record, that "The protest is against the refusal of the collector to post or repost a liquidation," moved orally to dismiss the importer's protest on the ground that there was no statutory authority therefor, and the cause was continued "pending action on" the motion.

It appears from the report of the collector, an affidavit by one P. Martin Ollinger (employed by counsel for the importer), correspondence between counsel for the importer and the Commissioner of Customs, and a letter from the Commissioner of Customs to the Collector of Customs at the port of New York that the Astra Bentwood Furniture Co., the importer, entered the involved merchandise for consumption on May 9, 1933; that a notice of the liquidation of the involved entry (the entry was stamped "LIQUIDATED" November 28, 1934) was posted in a conspicuous place in the customhouse at the port of New York on December 6, 1934; and that the entry number was correctly stated thereon. It appears from the record, however, that the name of the importer and the date of entry appearing on the notice of liquidation were incorrectly stated, the name of the importer being given as the "Astringent Wood Furniture Co.," and the date of entry as May 9, 1934. It also appears that on January 29, 1935, the importer, apparently in response to a "Notice of Duties Due" received from the collector, paid the sum of $42.80; that counsel for the im-

porter received no notification of such payment; that sometime thereafter (just when does not appear of record) Mr. Ollinger, according to his affidavit, made an investigation of the involved entry, No. 823668, and discovered that it had been stamped " 'liquidated,' but had never been posted nor the liquidation entered in the registration books" as "entry 823668 of 1933"; that on February 9, 1937, counsel for the importer wrote to the Commissioner of Customs requesting that he instruct the Collector of Customs at the port of New York to post a notice of the liquidation of the involved entry in accordance with law in order that the importer might have an opportunity to file a protest against the assessment of the additional duties theretofore paid by the importer; that on April 7, 1937, the Commissioner of Customs advised the Collector of Customs at the port of New York that as the importer had paid the additional duties on January 29, 1935, in response to the "Notice of Duties Due," and, "therefore, had actual notice of liquidation of the entry," the request of counsel for the importer that a proper notice of the collector's liquidation be posted on the bulletin board in the customhouse was denied; and that no notice of the collector's liquidation, other than the one hereinbefore set forth, was ever posted.

On April 12, 1937, the importer filed a protest with the collector, wherein it was claimed, among other things, that the involved merchandise had been wrongly assessed with duty by the collector at 45 per centum ad valorem under paragraph 397, *supra*, and that it was properly dutiable at only 25 per centum ad valorem under paragraph 338, *supra*. The protest was concluded with the following: "Entry No. 823668; vessel, *Deutschland;* entered May 9/33; bond No. C; refusal to post alleged liquidation April 7, 1937 [the date of the commissioner's letter to the Collector of Customs at the port of New York, hereinbefore referred to]."

In its decision—C. D. 79—dated January 17, 1939, the trial court denied the Government's motion of October 19, 1938, to dismiss the importer's protest, and, after referring to the facts of record hereinbefore set forth, held that notice of the collector's liquidation had not been posted in accordance with the mandatory provisions of article 820 (*h*) of the Customs Regulations of 1931; that the collector's refusal to post a proper notice of his liquidation was a final decision, within the purview of section 514 of the Tariff Act of 1930, against which the importer had a right to protest; that the 60-day period "after, but not before" the collector's liquidation, within which the importer might file a protest, as provided in section 514, *supra*, did not commence to run until the date (April 7, 1937,) of the collector's refusal to post notice of his liquidation, as provided by article 820 (*h*), *supra;* that the importer's protest, filed April 12, 1937, was timely, and, accordingly, overruled the Government's motion to dismiss it.

Thereafter, on June 12, 1939, the cause again came on for trial before the trial court; whereupon, counsel for the Government again moved orally to dismiss the protest on the ground that it was filed prematurely, contending that if there had been no legal liquidation of the involved entry because of the failure of the collector to post a proper notice thereof, there was no legal liquidation and no final decision, within the purview of section 514, *supra*, against which the importer could protest, and that, therefore, the court should dismiss the protest and return the entry to the collector with instructions to liquidate it in accordance with law.. Thereafter, on December 28, 1939, the trial court, C. D. 273, denied the Government's motion to dismiss the protest, holding as it did in its prior decision of January 17, 1939, that the final decision against which the importer had the right to protest was the collector's refusal to post notice of his liquidation in accordance with the mandatory provisions of article 820 (h), *supra*, and, accordingly, considered the case on its merits and sustained the protest.

Section 514 of the Tariff Act of 1930 reads:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

Section 505 of the Tariff Act of 1930 provides that—

*The consignee shall deposit with the collector, at the time of making entry,* unless the merchandise is entered for warehouse or transportation, or under bond, *the amount of duty estimated to be payable thereon.* Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and *shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due* or refund any excess of duties deposited as determined on such liquidation. [Italics ours.]

Article 820 (*h*) and article 1150 (*a*) of the Customs Regulations of 1931, which were in full force and effect at the time of the alleged liquidation of the involved entry, relate, respectively, to the posting of notice of the collector's liquidation of entries and the notice to be given to importers of "INCREASED AND ADDITIONAL DUTIES, ETC." They read:

Art. 820. Definition of liquidation—Procedure.—

\*     \*     \*     \*     \*     \*     \*

(h) When the entry is returned to the collector after the assessment of duty has been verified by the comptroller, the liquidation shall be deemed completed. The entry will then be immediately stamped with the word "liquidated" and the date of stamping, which is the legal evidence of liquidation, *and on the same day a bulletin notice thereof* (customs Form 4333) *must be posted in a conspicuous place in the customhouse for the information of importers.* [Italics ours.]

Art. 1150. Increased and additional duties, etc.—(a) A notice to importers of increased duties, additional duties, balance on bonds, and *supplemental estimated duties* will be prepared in triplicate on customs Form 5107 and the original mailed or delivered to the importer. [Italics ours.]

It is not contended in this court by counsel for appellant that the posted notice of the collector's liquidation "was a valid notice," nor is it contended that the statute of limitations, section 514, *supra,* commenced to run on the date of such notice. Counsel do contend, however, that the failure of the collector to post a notice of liquidation in accordance with article 820 (h), *supra,* "was cured," as stated in the brief of counsel, "by the actual notice of additional duty given to the importer and the payment thereof by the importer; and that the statute of limitations contained in section 514, *supra,* started to run either at the time of such notice [which does not appear of record] or at the time of such payment, which latter was January 29, 1935 \* . \*   \*, and expired at the latest on March 30, 1935." In support of that contention, counsel rely upon the decision of this court in the case of *Stein, Hall & Co.* v. *United States,* 11 Ct. Cust. Appls. 137, T. D. 38938. It is further contended by counsel for appellant that there is no authority for the filing of a protest against the refusal of the collector to post a notice of his liquidation, as required by article 820 (h), *supra;* that if the collector's liquidation in the instant case is not a final decision, so far as the statute of limitations is concerned, because a proper notice of the liquidation has never been posted in accordance with article 820 (h), *supra,* "then the claim for classification in the protest would be premature"; and that, therefore, the protest should have been dismissed by the trial court.

It will be observed that section 505, *supra,* mandatorily requires collectors of customs to give notice of liquidations "in the *form* and *manner* prescribed by the Secretary of the Treasury." [Italics ours.] The statute gives no discretion to the collectors of customs, either as to the form or manner of such notice.

It is evident, we think, that the Congress intended that the regulations of the Secretary of the Treasury, adopted pursuant to the provisions of section 505, *supra*, requiring notice of liquidations, no question of the reasonableness of such regulations being involved, should have the force and effect of law, and that the 60-day period after the collector's liquidation within which an importer might protest, as provided in section 514, *supra*, should not commence to run until notice of such liquidation was given by the collector to the importer in the "*form and manner* prescribed by the Secretary of the Treasury." [Italics ours.]

In article 820 (h), *supra*, the Secretary of the Treasury prescribed, in language too clear to be misunderstood, the precise form and manner of the notice of the liquidation of an entry to be given importers. Article 820 of the Customs Regulations, 1931, is entitled "DEFINITION OF LIQUIDATION—PROCEDURE," and paragraph (h) thereof provides that on the same day an entry is stamped "liquidated" a bulletin notice of the liquidation of such entry " (customs Form 4333) must be posted in a conspicuous place in the customhouse for the information of importers."

It appears from the record, as hereinbefore noted, that neither the correct date of the involved entry nor the name of the importer were given on the bulletin notice of the liquidation of the involved entry, and that no notice was ever posted in conformity with article 820 (h), *supra*.

It further appears from the record that the Commissioner of Customs, and the Collector of Customs at the port of New York were of opinion, as are counsel for the Government, that it was unnecessary for the collector to comply with article 820 (h), *supra*, because, it is argued, sometime after liquidation (the exact date does not appear of record) the collector complied with the provisions of article 1150 (a), *supra*, and mailed to the importer a "Notice of Duties Due" ("customs Form 5107"); and that as the importer, in response to such notice, paid the duties due, it had actual notice of the liquidation of the involved entry.

We find nothing in article 1150 (a), *supra*, to indicate that the provisions thereof were intended by the Secretary of the Treasury to relate to notice of the liquidation of entries, and the "Notice of Duties Due" ("customs Form 5107" a public document, the contents of which we may take judicial notice) contains no reference to liquidation.

The "Notice of Duties Due," as its title indicates, served merely to inform the importer of increased duties due the United States. It was not intended to be, nor was it in fact, an attempted compliance with the mandatory provisions of section 505, *supra*, requiring that notice of the collector's liquidation be given in the form and manner prescribed by the Secretary of the Treasury. So, although in the

·instant case the importer, upon receipt of the "Notice of Duties Due," might have surmised (it was not notified) that the involved entry had been liquidated; therefore, the mere payment of the duties, in effect demanded by the collector in such notice, is not sufficient to warrant a holding that the importer had actual notice of the liquidation of the involved entry.

Whether notice of liquidation has been given by the collector in the form and manner prescribed by the Secretary of the Treasury is, of course, a question to be determined in each case.

In the instant case, it is clear that the provisions of article 820 (h) have not been complied with. We are of opinion that as the collector failed to give the notice required by article 820 (*h*), *supra*, the 60-day period after the liquidation within which the importer might protest, as provided in section 514, *supra*, has not commenced to run.

In the case of *Stein, Hall & Co.* v. *United States, supra,* relied upon here by counsel for the Government, it appeared that the final liquidation was made September 23, 1918, and that the notice of such liquidation was posted in the customhouse on September 23, 1918 (although in the decision in that case, due no doubt to a typographical error, it is stated that the notice was posted on March 23, 1920), pursuant to article 615 of the Customs Regulations of 1915; that pursuant to article 616 of those regulations *notice* ("Customs Form 4877," of which we may take judicial notice) *of the liquidation of the entry, the date thereof,* and the duties due the Government *"upon liquidation"* was mailed to, but apparently not received by, the importer [italics ours]; and that the liquidated duties were paid by the importer on April 10, 1919, and a protest filed not earlier than May 14 of that year, more than 30 days after the liquidation and also more than 30 days after the payment of the liquidated duties. The court there held that the protest was untimely because it was not filed within the statutory period (30 days after, but not before liquidation), and, among other things, said:

\* \* \* We think that at the time they paid the liquidated duties, *in view of the circumstances in this case,* it is fair to presume that they acted understandingly and knew what they were paying for and why. It therefore became incumbent upon them, whether they had received any prior notice of liquidation or not, to tender a protest within 30 days from the time of such payment, if they desired to contest the legality of the liquidation. [Italics not quoted.]

Article 615, *supra,* provided, among other things, that when an entry was liquidated it should be "stamped with the word 'Liquidated'" and that "on the same day a bulletin notice thereof, on Customs Form 4333, must be posted in a conspicuous place in the customhouse for the information of importers."

In the *Stein, Hall & Co.* case, *supra,* the court evidently considered that, under the law then in force, actual notice in some form or other to an importer of the liquidation of an entry was sufficient; that

(although there is nothing in the court's decision to indicate that a proper notice was not posted of the liquidation of the entry there involved) the provision of article 615, *supra*, requiring the posting in the customhouse of notice of the liquidation of an entry was not mandatory but directory only; and that the statute of limitations then in force commenced to run upon actual notice of the liquidation of an entry.

It may be stated at this point that the Tariff Act of 1913 contained no statutory provision, as does the Tariff Act of 1930 (section 505, *supra*), requiring notice to importers of the liquidation of entries. For that reason, if for no other, the decision in the *Stein, Hall & Co.* case, *supra*, is not controlling of the issues here presented.

We are constrained to disagree with the holding of the trial court in the instant case that the collector's refusal to post a bulletin notice of the liquidation of the involved entry in a conspicuous place in the customhouse, as required by article 820 (h), *supra*, is a decision, or an order or a finding entering into the same, "as to the rate and amount of duties chargeable" against the merchandise covered by the involved entry, within the purview of section 514, *supra*. Nor are we able to find any other provision in that section which would warrant a holding that the 60-day period within which the importer might protest commenced to run on the date of the *refusal* of the collector to post the notice of his liquidation in the form and manner required by law. It may be said, furthermore, that if the statute of limitations did not commence to run in the instant case because the collector *failed* to give notice of his liquidation in the form and manner provided by law, it certainly did not commence to run merely because the collector *refused* to give such notice.

We hold, therefore, that there has been no final legal liquidation of the involved entry against which, within the purview of section 514, *supra*, the importer may "within sixty days after, but not before such liquidation" file a protest; that the protest in the instant case is premature, and, therefore, untimely, and should have been dismissed by the trial court.

In conclusion, we think it proper to say that it is the duty of the collector to complete his liquidation of the entry in the manner provided by law so that the importer, if it sees fit to do so, may protest the liquidation within the time prescribed by section 514, *supra*.

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.